UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

------------------------------------------------------------------------------------------------

In re:                                                    Case Number: 10-12142-13

     SUZANNAH META SCHMID,

                Debtor.

-----------------------------------------------------------------

     SUZANNAH META SCHMID,

                Plaintiff,
     v.                                                   Adversary Number: 12-160

     BANK OF AMERICA, N.A., and
     ASSOCIATED BANK, N.A.,

                Defendants.

------------------------------------------------------------------------------------------------

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND
MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT, DEFENDANT'S MOTION TO DISMISS,
AND PLAINTIFF'S OBJECTION TO CLAIM**

The Debtor and Plaintiff, Suzannah Meta Schmid ("Debtor"), filed an

objection to Claim No. 2 filed by BAC Home Loans Servicing, LP ("BAC"), now

known as Bank of America as a successor by merger ("BANA"), contending that

BAC "is not the real party in interest" and that it "owns neither the promissory

note nor the mortgage."[1] The Debtor then filed this adversary proceeding

contending that BANA is neither a real party in interest nor the owner of the

---

[1] Debtor admits BANA is a successor by merger to BAC.  Accordingly, references
to BAC are also applicable to BANA and vice versa.

note and mortgage supporting Claim No. 2 (the "Adversary Proceeding"). The Debtor filed an Amended Complaint on August 16, 2012.

On October 31, 2012, the Debtor filed a motion seeking leave to file a second amended complaint ("Motion to Amend") to "correct factual allegations which do not effect [sic] the substance of the relief requested in the adversary proceeding." The factual errors she seeks to correct are, according to her, "immaterial and merely errata" that make "no substantive difference." BANA opposes the Motion to Amend.

BANA moved, pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6), to dismiss the Debtor's Complaint and Amended Complaint with prejudice for failure to state a claim upon which relief can be granted ("Motion to Dismiss"). BANA contends, further, that the Complaint and Amended Complaint should be dismissed under the doctrine of claim preclusion. BANA also seeks to have the decision on the Motion to Dismiss address the Claim Objection that remains pending on the docket.

The parties filed briefs addressing both the Motion to Amend and the Motion to Dismiss. The Court has consolidated the Claim Objection and the Adversary for decision.

After considering the arguments presented, the Motion to Amend is denied. The Motion to Dismiss is granted, and the Debtor's objection to BANA's Claim No. 2 is denied. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law.

To the extent the Court lacks authority to enter a final order on some of the claims, this decision will also constitute proposed findings and conclusions for consideration by the district court.

## BACKGROUND

<u>The Loan Transaction</u>

The Debtor signed a note on March 3, 2004, for a loan from M&I of $40,950 ("Note"). *Motion to Amend, Exhibit 3, Adv. Pro. ECF No. 15.* To secure the Note, she signed a mortgage on her homestead in Almond, Wisconsin in favor of M&I Mortgage Corporation ("M&I") (the "Mortgage"). *Motion to Amend, Exhibit 2.* It was recorded in the Portage County Register of Deeds on March 8, 2004.

There were a series of endorsements transferring the Note, first in favor of Countrywide Document Custody Services ("CDCS") ("CDCS Allonge"), then to Countrywide Home Loans ("CHL"), and finally an endorsement in blank. Similarly, the Mortgage was the subject of multiple assignments. First, it was assigned to CDCS, and thereafter to BAC. The transfers of the Note and Mortgage may be depicted follows:



The State Court Proceedings

The Debtor did not pay the Note. Her bankruptcy schedules acknowledge an arrearage on the Note as of the Petition Date but dispute that BAC is the proper party creditor and argue there was an "invalid assignment of mortgage" and that it is "unknown when BAC Home Loans Servicing, LP obtained the promissory note." *Schedule D, Bankr. Pro. ECF No. 23, p. 8.* The Statement of Financial Affairs identifies a mortgage foreclosure action and judgment in favor of BAC that was entered in Portage County Circuit Court on September 24, 2009. *Statement of Financial Affairs, Bankr. Pro. ECF No. 24, p. 2.*

The Court has a limited record before it of the litigation that produced the judgment on which BANA relies for its claim that the ownership of the Note and Mortgage has already been determined. The Portage County Circuit Court entered its Findings of Fact, Conclusions of Law and Judgment on September 24, 2009 ("State-Court Judgment," "Judgment"). *Motion to Dismiss, ECF No. 9-1, Exhibit A*. The Judgment confirms, following service of the summons and complaint, that no answer was filed, and that the Judgment was a default judgment.

The Judgment found and determined that all of the material allegations in the complaint were proven and true, and that the Debtor owed $41,712.14 to BAC under the terms of the Note and Mortgage. The Judgment directed that the Debtor's property be sold at a sheriff's sale any time after six months from the entry of the Judgment, and that the proceeds of sale, after the fees and expenses of the sale, be applied to the amounts owed to BAC. The Debtor did not appeal the Judgment.

The Bankruptcy Proceedings

On March 23, 2010, the Debtor filed her Chapter 13 petition. On May 24, 2010, Associated Bank, N.A. ("ABNA") filed a Proof of Claim for $30,066,75. On June 9, 2010, BAC filed a Proof of Claim for $41,349.26.

On November 12, 2010, the Debtor objected to the BAC claim asserting, among other grounds, that BAC was "not the real party in interest" and that BAC is not the owner or holder of the Note and Mortgage. A second objection to

the claim was filed by the Debtor on April 27, 2012. In it she reasserted issues related to the ownership of the Note and Mortgage, and challenged whether the transfers of these documents were effective to confer standing on BAC or BANA to enforce or collect on the Judgment, Note, and Mortgage.

On June 9, 2011, the Debtor filed an objection to the ABNA claim "pending a determination on" the objection to the BAC claim. On August 9, 2011, she filed a motion to continue the hearing on her objection to BAC's claim until September 21, 2011. *Bankr. Pro. ECF No. 94*. Included in that motion was a representation that BAC's merger with BANA would cause additional discovery requests. On August 15, 2012, the Debtor filed an Adversary Complaint against ABNA and BANA alleging, among other claims, that the Note and Mortgage were not owned by BAC. The next day, she filed an Amended Complaint against the same defendants to correct typographical errors. The Amended Complaint contains only minor variations on the arguments raised in the Debtor's objection to BANA's proof of claim.

BANA filed its Motion to Dismiss on September 14, 2012. On October 30, 2012, the parties filed a Joint Pre-Trial Statement. On October 31, 2012, the Debtor filed her Motion to Amend asserting a need to amend in order "to correct mistakes and inadvertent errors in the earlier filed Amended Complaint."

After a hearing on February 14, 2013, the Court took both the Motion to Dismiss and the Motion to Amend under advisement. The Court confirmed that

the Claim Objection would be consolidated with a decision on the Motion to
Dismiss.

## RELIEF SOUGHT

The Debtor's Amended Complaint (and the proposed Second Amended
Complaint) seeks a determination of the validity and enforceability of the
claims of BANA. The Debtor seeks a determination that the assignments of the
Note and Mortgage are void and unenforceable as a result of fraud; that no
amounts are owed to BANA; that BANA is not the real owner or holder of the
Note and Mortgage; that the assignments, allonges and endorsements are a
forgery or unenforceable because the assignments were to nonexistent entities,
or in blank; and that the claims of ABNA be disallowed as unsecured if the
claim of BANA is allowed. Further, the Debtor asks the Court to determine that
the proof of claim is false or fraudulent. She argues that BANA does not have
standing, or is not a real party in interest, to maintain a claim. Debtor also
requests an award of costs and attorneys' fees and "reserves her rights to bring
claims at law for damages . . . ."

Finally, at various points the Debtor makes the very general claim that
her note was "paid by the United States Treasury under 12 U.S.C. § 5212 . . . ."
*Amended Complaint at ¶ 35.* She alleges that the debt was paid "in full
pursuant to 12 U.S.C. § 5212 . . . ." *Id.* at ¶ 38. Elsewhere, however, the Debtor
states that she "did not allege that she does not is not [sic] required to pay
[BANA] on its false secured claim in this case because funds were paid to it or

7

its predecessor in interest under [TARP]." *Brief in Opposition to Motion to Dismiss*, *ECF No. 28, p. 14*. Instead, she explains, she "merely alleged that the debt [BANA] is attempting to collect has already been paid in full for the purpose of demonstrating [BANA's] incentive to commit the forgeries in order to defraud the courts." *Id.* She continues that her "point was not to claim that the loan was not owed by the [Debtor], but rather that [BANA] does not own the loan." *Id.* Moreover, Debtor's counsel asserts that "[s]ince December 30, 2012, [Attorney Nora] has come to believe that many of the loans which are represented by forged documents or have breaks in the chain of ownership of the loan claim [sic] may be owned by . . . Fannie Mae or Freddie Mac." *Id.* at 15. She concludes that, "[e]ither way, the United States Treasury is the real party in interest to which payments would be owed." *Id.*

## DISCUSSION

### General Jurisdictional Issues

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 ("Bankruptcy Code" or "Code") and "original but not exclusive jurisdiction" of all civil proceedings that arise under the Bankruptcy Code, or that arise in or are related to cases under the Code. 28 U.S.C. §§ 1134(a)-(b) (2012). The district courts may, however, refer such cases to the bankruptcy judges for their district. 28 U.S.C. § 157(a) (2012). In the Western District of Wisconsin, the district court has made such a reference. Western District of Wisconsin Administrative Order 161 (July 12, 1984).

8

Pursuant to the reference, this Court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1) (2012). If a matter is not a core proceeding, but is related to a bankruptcy case, the bankruptcy judge may hear the matter but must submit proposed findings of fact and conclusions of law to the district court for entry of the final order. 28 U.S.C. § 157(c)(1). In *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), the Supreme Court held that even though a proceeding (a counterclaim to a proof of claim) was listed as a core proceeding at 28 U.S.C. § 157(b)(2), the bankruptcy judge lacked constitutional authority to enter a final order.

In the present matter, the nub of the dispute was originally brought before the Court in the form of an objection to BANA's proof of claim. There is no question that the allowance of a creditor's proof of claim is a core matter under 28 U.S.C. § 157(b)(2)(B) that this Court may hear and finally determine. Likewise, *"Stern* reaffirmed that bankruptcy courts have the authority to restructure the debtor-creditor relationship and determine 'creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.'" *Rinaldi v. HSBC Bank USA, N.A.* (*In re Rinaldi*), 487 B.R. 516, 523 (Bankr. E.D. Wis. 2013) (quoting *Stern*, 131 S. Ct. at 2614). As such, this Court has both the power under the Bankruptcy Code and the Constitutional authority to decide

9

this matter and enter a final judgment. This Court may also determine the validity of the BANA mortgage lien on the Debtor's residence as property of the bankruptcy estate and as part of the process of claim allowance. *See Pulaski v. Dakota Fin., LLC* (*In re Pulaski*), 475 B.R. 681, 687 (Bankr. W.D. Wis. 2012).

If, however, the matters raised are not core proceedings, the bankruptcy judge may hear the proceeding but must submit proposed findings of fact and conclusions of law to the district court for the entry of the final order. 28 U.S.C. § 157(b)(2).

Although not couched as a counterclaim to BANA's proof of claim, the Debtor's Amended Complaint alleges that the assignments and endorsements are a "forgery" and are "false or fraudulent." The Debtor requests an award of costs and fees in connection with challenging the BANA Claim. Further, the Amended Complaint purports to "reserve [Debtor's] rights to bring claims at law for damages . . . on the facts alleged . . . ." These kinds of assertions are analogous to the state-law counterclaims made in *Stern*. They are not claims arising under the Bankruptcy Code and could be (or could have been) brought outside of the bankruptcy court.

Bankruptcy courts may determine whether a proceeding is core or non-core. 28 U.S.C. § 157(b)(3). The Amended Complaint (and the proposed Second Amended Complaint) assert that all of the claims are core proceedings within the meaning of 28 U.S.C. § 157(b)(2). The sole explanation for this assertion is the statement that the Adversary Proceeding "concerns claims and matters

arising out of the administration of this bankruptcy case and rights duly established under Title 11 . . . and other applicable federal law." The claims of forgery or fraud, however, do not stem from the bankruptcy itself, nor will such claims necessarily be resolved in the claims allowance process. *See Rinaldi*, 487 B.R. at 524 (concluding that common law fraud claims are non-core proceedings). They are not matters that would "have no existence outside of the bankruptcy." *See Ortiz v. Aurora Health Care, Inc.*, 665 F.3d 906, 912 (7th Cir. 2011) (quoting *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 719 (7th Cir. 2010) (citations omitted)). To the contrary, the Debtor's fraud claims are purely matters of state law. The mere fact that the fraud claims were brought by the Debtor after BANA filed a proof of claim in the bankruptcy proceeding does not confer authority on this Court to adjudicate them. *Id.* at 914. Likewise, to the extent the Debtor argues that her claims for damages and for attorneys fees and costs are core proceedings, she is wrong. *See id.* at 912; *see also Estate of Jones v. State Farm Mut. Auto Ins. Co. (In re Jones)*, 410 B.R. 632, 639-40 (Bankr. D. Idaho 2009) (concluding that state law insurance claim and claim for attorneys fees and costs were non-core proceedings).

The parties have not expressly consented to the entry of a final order by this Court to the claims for costs, attorney fees or reserved damages claims. When faced with a combination of core and non-core claims, the best approach is for the bankruptcy court to determine the extent of its jurisdiction with respect to each claim. *Rinaldi*, 487 B.R. at 525 (citing *Massey v. Baker O'Neal*

*Holdings, Inc.,* 204 U.S. Dist. LEXIS 203, at \*11, 2004 WL 252013 (S.D. Ind. Jan. 28, 2004)). "It should then enter a final judgment with respect to only those claims that are truly core matters and should forward a report and recommendation to the district court on any non-core but 'related to' claims." *Id.* (citation omitted).

Consistent with this approach, this Court will address the Motion to Amend, the Motion to Dismiss, and the Claim Objection. To the extent such matters are core claims, the Court will enter a final order. With respect to non-core claims of fraud, the award of costs and fees, and the reservation of claims for damages, this Court will make proposed findings of fact, conclusions of law, and recommendations to the district court.

The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine prevents the federal district courts from entertaining actions brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)). "The *Rooker-Feldman* doctrine is jurisdictional in nature; its applicability must be determined before any other affirmative defense, including claim preclusion." *Rinaldi*, 487 B.R. at 525 (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554–55 (7th Cir.1999)). When it is applicable, it prohibits the district

12

court from exercising appellate jurisdiction over final state-court judgments.
*Dennis*, 546 U.S. at 463.

It is, however, a "narrow doctrine" that applies only "where a party in
effect seeks to take an appeal of an unfavorable state-court decision to a lower
federal court." *Id.* at 464, 466. *Rooker-Feldman* operates to stop parties seeking
to have a state-court judgment declared void on the basis of alleged errors or
mistakes. Even "[i]f the state-court decision was wrong . . . 'that [does] not
make the judgment void, but merely [leaves] it open to reversal or modification
in an appropriate and timely appellate proceeding.'" *Id.* (quoting *Rooker v.
Fidelity Trust Co.*, 263 U.S. 413, 415, 44 S. Ct. 149, 68 L. Ed. 362 (1923)).

The *Rooker-Feldman* doctrine has been applied to bar collateral attacks
on judgments entered in state-court foreclosure proceedings. *Rinaldi*, 487 B.R.
at 525-26; *Fischer v. Bank of America, N.A. (In re Fischer)*, 483 B.R. 877, 883
(Bankr. E.D. Wis. 2012) (citing *Kline v. Deutsche Bank Nat'l Trust Co.* (*In re
Kline*), 472 B.R. 98, 105 (10th Cir. BAP 2012)). The doctrine has also been
applied where the judgment that was entered was a default judgment. *See, e.g.*,
*Fischer*, 483 B.R. at 883 (citing *Stewart v. JPMorgan Chase Bank, N.A.* (*In re
Stewart*), 473 B.R. 612, 630 (Bankr. W.D. Pa. 2012) ("The jurisdictional
limitations imposed by *Rooker-Feldman* apply . . . also to default judgments.");
*Randall v. Bank One Nat'l Ass'n* (*In re Randall*), 358 B.R. 145, 159 (Bankr. E.D.
Pa. 2006) ("[A] default judgment in mortgage foreclosure, prior to any sale, was
sufficient to trigger application of *Rooker-Feldman*.")).

13

The Doctrine of Claim Preclusion

Under the doctrine of claim preclusion, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981); *Kruckenberg v. Harvey*, 2005 WI 43, ¶ 19, 279 Wis. 2d 520, 694 N.W.2d 879 (Wis. 2005). In Wisconsin, there are three elements of claim preclusion: "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." *Id.* at ¶ 21 (citations omitted).

There is an exception to the doctrine of claim preclusion "if the plaintiff did not have a full and fair opportunity to litigate his claim in state court . . . ." *Licari v. City of Chicago*, 298 F.3d 664, 666–67 (7th Cir. 2002). A plaintiff has had "a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Id.* at 666–67. Despite this requirement, "[c]ourts have consistently applied *res judicata* to default judgments." *In re Walz*, 44 B.R. 973, 975 (Bankr. W.D. Wis. 1984).

The law of the state where the prior judgment was entered governs whether the doctrine of claim preclusion applies. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984). In the context of a default judgment, "[t]he conclusiveness of a default judgment

14

. . . is limited to the material issuable facts which are well pleaded in the

declaration or complaint. The judgment does not extend to issues which were

not raised in the pleadings." *Menard, Inc. v. Liteway Lighting Prods.*, 2005 WI

98, ¶ 34, 282 Wis. 2d 582, 698 N.W.2d 738 (Wis. 2005) (citations omitted); *see*

*also Klaus v. Vander Heyden*, 106 Wis. 2d 353, 359, 316 N.W.2d 664 (Wis.

1982) ("In the case of a default judgment, relief is limited to that which is

demanded in the plaintiff's complaint.").

In addition, Wisconsin's "notice pleading" policy affects the claim

preclusion analysis. Wis. Stat. § 802.02(1)(a) requires that complaints include

"[a] short and plain statement of the claim, identifying the transaction or

occurrence or series of transactions or occurrences out of which the claim

arises and showing that the pleader is entitled to relief." As a result, "a

complaint must simply contain [a] short and plain statement of the claim,

identifying the transaction or occurrence or series of transactions or

occurrences out of which the claim arises and showing that the pleader is

entitled to relief. These claims are to be liberally construed [so] as to do

substantial justice." *Doe 67C v. Archdiocese of Milwaukee*, 2005 WI 123, 284

Wis. 2d 307, 328-29, 700 N.W.2d 180, 190 (Wis. 2005) (citations omitted).

Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d. 868

(2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.

Ed. 2d. 929 (2007), state the standard of review for motions to dismiss under

15

Fed. R. Civ. P. 12(b). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Further, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Finally, to survive a Rule 12(b)(6) motion, the factual allegations set forth in the complaint, taken as true, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In the Seventh Circuit, the standard of review under Rule 12(b)(6) has been explained as follows: "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Moreover, where a plaintiff alleges fraud, Fed. R. Bankr. P. 7009 and Fed. R. Civ. P. 9(b) require that a complaint "state with particularity the circumstances" constituting the fraud. In the same vein, the Seventh Circuit has held that "a plaintiff must plead actual damages arising from her reliance on a fraudulent statement." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010).

16

<u>Motions to Amend Under Fed. R. Civ. P. 15(a)(2)</u>

Rule 15(a)(2), Fed. R. Civ. P., governs amendments of pleadings and is made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7015. Rule 15(a)(2) states that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, leave should not be granted "when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Likewise, leave to amend may be justifiably denied "if the proposed amendment could not withstand a motion to dismiss . . . . The liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures." *Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985) (citing *Holloway v. Dobbs*, 715 F.2d 390, 392-93 (8th Cir. 1983)).

## ANALYSIS

<u>The Debtor's Motion to Amend</u>

In her Motion to Amend, the Debtor asserts a need to "correct mistakes and inadvertent errors in the earlier filed Amended Complaint." *Motion to Amend at ¶ 22*. Specifically, the Debtor states that the proposed new complaint would correct prior allegations concerning MERS and clarify a confusion of CDCS and CHL. She makes other arguments under Fed. R. Civ. P. 60

17

concerning the grounds for relief from judgment that are inapplicable here

because no judgment has been entered. *Id.* at ¶¶25-29. In her brief, she

elaborates that she "seeks to correct erroneous factual allegations which do not

effect [sic] the substance of the relief requested in the adversary proceeding."

*Brief in Support of Motion to Amend at p. 4, Adv. Pro. ECF No. 30*. She goes on to

explain that "[t]he substance of her claim for relief is not altered by correcting

the two factual errors, which are immaterial and are merely errata." *Id.*

Furthermore, she admits that the corrections she hopes to make are "obvious

on the face of the record," and "the proposed amendment merely seeks to

conform the factual allegations in the adversary complaint to the true facts in

order to correct immaterial mistakes in the initial pleading." *Id.* Finally, the

Debtor goes as far as to confess that "even if the amendment is not allowed, the

corrections made in the Second Amended Complaint are immaterial to the

ultimate issue: [BANA] is owed nothing by [the Debtor] and the foundation of

its false claim are forged documents." *Id.* at 9.

Scheduling orders and briefing schedules have been repeatedly

established in this case. At every turn, the Debtor has sought delays of these

proceedings, including a motion to extend time, a motion for "stay," and, most

recently, the Motion to Amend. Whether cloaked in the dress of a claim

objection or the guise of an adversary proceeding, the fundamental claims and

objection of the Debtor to the BANA Claim have been pending since November

12, 2010, but have not actually been addressed until now. The addition of

18

supplemental facts, dates, and references to additional exhibits, allegations

regarding the timing of the transfers, and new reasons the Debtor believes the

execution of the assignments and endorsements are not valid do not change

the fundamental claims she asserts. With or without correction of these

"immaterial mistakes," BANA has long been on notice of the nature of the

Debtor's claims. It is past time to address them.

Given the considerable duration of the underlying bankruptcy

proceeding, the Court finds that there is no reason to grant the Debtor leave to

file amendments that are by her own description "immaterial" to the

determination of the ultimate issue before the Court. To do so would impose

undue delay and prejudice upon the other parties. In any event, as discussed

below, given the Court's disposition of BANA's Motion to Dismiss, any

amendments merely to correct errata would be futile. The Debtor's Motion to

Amend is therefore denied.

<u>BANA's Motion to Dismiss</u>

A.    *Rooker-Feldman* Analysis

The first and broadest ground for dismissal of the Debtor's adversary

complaint is through the application of the *Rooker-Feldman* doctrine.[2] The

*Rooker-Feldman* doctrine prohibits litigants from using the federal district

---

[2] The *Rooker-Feldman* doctrine applies in adversary proceedings in bankruptcy. *See, e.g.*, *Rinaldi*, 487 B.R. at 525 (citing *Knapper v. Bankers Trust Co.* (*In re Knapper*), 407 F.3d 573, 581 (3d Cir. 2005) (citations omitted)).

courts as an appellate body for adverse state-court judgments. The doctrine has long stood for the proposition that, regardless of the flaws in the State-Court Judgment or in the process at which it was arrived, appeals must be taken through the proper procedural channels. In the case of adverse judgments by a state court, the doctrine requires litigants to make their appeal to the appropriate state appellate court. Litigants may under some circumstances bring their case to the federal courts once the state's appeals courts have disposed of the matter. Even then, however, such matters may only be appealed to the United States Supreme Court. In no case are the federal district courts—nor any other inferior federal court—empowered with appellate jurisdiction for judgments entered by state courts.

With this understanding of *Rooker-Feldman* as a backdrop, disposing of the present case under the doctrine is straightforward. At the heart of the *Rooker-Feldman* analysis is the question of whether "the injury alleged by the federal plaintiff resulted from the state-court judgment itself or is distinct from that judgment." *Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir. 2002) (citations omitted). As long as the injury complained of in federal court is "inextricably intertwined" with the state-court judgment, the doctrine applies. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554-55 (7th Cir. 1999); *Rinaldi*, 487 B.R. at 526.

Here, there can be no doubt that the injury that is the basis for the Debtor's claim objection and adversary proceeding is "inextricably intertwined"

20

with the State-Court Judgment. The crux of the argument she has advanced at

every stage is the same: BANA somehow lacks standing to foreclose on her

home. This question was presented to and answered squarely by the Portage

County Circuit Court in the Default Judgment. The Judgment found, in no

uncertain terms, that BANA (as successor to BAC) is owed under the terms of

the Note. It also clearly directed that the Debtor's property be sold to satisfy her

debt to BAC (now BANA). It makes no difference that the Debtor failed to

answer the state-court complaint. The *Rooker-Feldman* doctrine applies to

block collateral attacks on state-court default judgments of foreclosure. *See*

*Fischer*, 483 B.R. at 883; *Randall*, 358 B.R. at 159. The Debtor's failure to

appeal the Judgment through the state-court appellate process does not entitle

her now to bring that appeal to the bankruptcy court.

Furthermore, her claims that, for a variety of reasons ranging from

mistake to fraud, the Judgment is flawed have no bearing on the question of

whether this Court may disturb the original decision. The bottom line is,

whatever infirmities the Debtor thinks undermine the State-Court

Judgment—and this Court passes no judgment whatsoever as to whether the

Judgment is infirm or not—under the *Rooker-Feldman* doctrine this Court has

no jurisdiction to revisit it.

B.     Claim Preclusion Analysis

The second ground on which the Debtor's adversary complaint may be

dismissed is through the application of the doctrine of claim preclusion. In

Wisconsin, the three elements of claim preclusion are: (1) identity between the

parties or their privies in the prior and present suits; (2) prior litigation that

resulted in a final judgment on the merits by a court with jurisdiction; and (3)

identity of the causes of action in the two suits. *Kruckenberg*, 694 N.W.2d at

885. Upon review of the pleadings, all three elements are met.

First, there is identity between the parties in the state-court action and

the parties to the claim objections and the adversary proceeding. The Debtor

willingly concedes that BANA, the defendant in the adversary proceeding, is the

successor by merger to BAC Home Loan Servicing, L.P., the plaintiff in the

state-court action. Therefore, there is no question as to the identity of the

parties in the two actions.

Second, the parties do not dispute that the Portage County Circuit Court

had jurisdiction to hear the foreclosure proceeding. Both the Wisconsin

Constitution[3] and the Wisconsin Statutes[4] provide that the state circuit courts

---

[3] "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may provide by law. The circuit court may issue all writs necessary in aid of its jurisdiction." Wis. Const. art. VII, § 8.

[4] "The circuit courts have the general jurisdiction prescribed for them by article VII of the constitution and have power to issue all writs, process and commissions provided in article VII of the constitution or by the statutes, or which may be necessary to the due execution of the powers vested in them. The circuit courts have power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court; and they have all the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carry into effect their judgments, orders and other determinations, subject to review by the court of appeals or the supreme

(continued...)

have jurisdiction over foreclosure proceedings. As to the nature of the judgment, "[u]nder Wisconsin law, the judgment of foreclosure and sale determines the parties' legal rights in the mortgaged property." *Shuput v. Lauer*, 109 Wis. 2d 164, 325 N.W.2d 321 (Wis. 1982). Furthermore, "the judgment of foreclosure and sale disposes of the entire matter in litigation and is a final judgment appealable as a matter of right . . . ." *Anchor Sav. & Loan Ass'n v. Coyle*, 148 Wis. 2d 94, 101, 435 N.W.2d 727, 730 (Wis. 1989). For purposes of claim preclusion, the default judgment entered in the foreclosure proceeding is a final judgment on the merits. *See In re Walz*, 44 B.R. 973, 975 (Bankr.W.D. Wis.1984). Because the thrust of the Debtor's argument is that BANA lacks standing to enforce the Note and Mortgage, the fact that the State-Court Judgment disposed of this precise issue resolves any need to examine any of the other issues raised in BANA's complaint. The fact that the Debtor did not appear or file an answer in the foreclosure proceeding is of no consequence. Indeed, the Debtor herself does not dispute that the Portage County Circuit Court entered a final judgment as to the ownership of her Note and Mortgage. Her position is simply that for a number of possible reasons the Judgment is void or invalid. Thus, the second element is met.

---

[4](...continued)
court as provided by law. The courts and the judges thereof have power to award all such writs, process and commissions, throughout the state, returnable in the proper county." Wis. Stat. § 753.03 (2012).

Finally, there is an identity of the causes of action in the two cases.
BANA's complaint in the state-court proceeding sought to establish its
ownership of the Note and Mortgage, and to enforce its rights through
foreclosure. The Debtor's claim objections and Amended Complaint seek to
establish that BANA does not own the Note and Mortgage. The two causes of
action are identical, so the third and final element of claim preclusion is met.

Finally, although not pled, the Debtor's TARP claim would also fail under
the doctrine of claim preclusion in light of the State-Court Judgment. Without
rehashing the discussion, *supra*, of the doctrine, it suffices to say that the three
elements required to apply claim preclusion here are met. First, the same
parties are involved now as were involved in the Portage County Circuit Court
foreclosure action. Second, that litigation resulted in a final judgment on the
merits, and the circuit court clearly had jurisdiction. Last, the argument here
that the use of TARP funds might somehow deprive BANA from its rights in the
Debtor's mortgage is basically the same as her arguments concerning fraud.
That is, the question of BANA's ownership of the Note and Mortgage was
squarely decided by the State-Court Judgment. Therefore, the doctrine of claim
preclusion bars the Debtor's TARP argument from being heard by this Court.

C.    Fed. R. Civ. P. 12(b)(6) Analysis

Even if the application of the *Rooker-Feldman* and claim preclusion
doctrines did not independently warrant dismissal, the adversary complaint
could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). In *Iqbal*,

24

the Supreme Court articulated the test for motions to dismiss: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Finally, to survive a Rule 12(b)(6) motion, the factual allegations set forth in the complaint, taken as true, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Debtor's Complaint fails to meet this standard.

As an initial matter, it should be noted that the Debtor's allegations concerning supposed defects in the assignment of the Mortgage are utterly beside the point. As she herself has acknowledged, the doctrine of equitable assignment makes irrelevant any purported improprieties in the conveyance of the Mortgage so long as the accompanying Note was effectively conveyed. *See Second Objection to BANA's Secured Claim #2 at ¶ 10, Bankr. Pro. ECF No. 131* ("There are two ways to prove a secured mortgage claim: . . . (2) the owner . . . of the note can seek equitable assignment of the mortgage upon demonstration of the lawful transfer of the note.").

This doctrine has been the law in Wisconsin for more than a century: "[a] writing [is] not necessary to a valid assignment of the mortgage . . . . An interest in the debt might well be transferred . . . without a written assignment. The transfer of the debt carries the mortgage with it." *Franke v. Neisler*, 97 Wis.

25

364, 367, 72 N.W. 887, 888 (Wis. 1897). Indeed, "[t]he note and mortgage are
inseparable; the former as essential, the latter as an incident. An assignment of
the note carries the mortgage with it, while an assignment of the latter alone is
a nullity." *Edwards*, 2011 WL 6754073, at *7-8 (quoting *Carpenter v. Longan*,
83 U.S. 271, 274, 21 L. Ed. 313 (1873)). "The debt is the principal thing, to
which the security instrument as an instrument thereof . . . . Under this view,
long established in Wisconsin law, the Mortgage is equitably assigned when the
Note is endorsed and negotiated to its current holder." *Id.* at *7-8 (quoting
*Tidioute Sav. Bank v. Libbey*, 101 Wis. 193, 77 N.W. 182, 183 (Wis. 1898)).
Thus, barring a prima facie showing that BANA is not a holder of the Note, her
claim cannot survive the Motion to Dismiss. No such showing has been made.

The Debtor's argument concerning the transfer of the Note fails for
multiple reasons. In the Amended Complaint she alleges that the Note, which
was endorsed several times before ultimately being endorsed in blank, was
improperly transferred at several different stages. She first argues that the
endorsement from M&I to CDCS was a "mistake because it is clear from its
name that [CDCS], which was merely a document storage service, did not own
or hold mortgage notes." *Amended Complaint at ¶ 22*. This assertion is without
merit. Under basic principles of contract law, CDCS was capable of receiving
the transfer regardless of its business function.

Her second assertion concerning the Note appears to center on the
conclusion, drawn entirely by the Debtor's counsel without the benefit of a

factual or legal basis, that the endorsement from CDCS to CHL was "fabricated to make it appear that there was a specific endorsement from [CDCS] to [CHL] and from [CHL] to BLANK." *Id.* at ¶ *26.* She also argues that CHL did not exist at the time the endorsement was made, that it was endorsed in blank in order to deceive this Court as to the identity of the true party in interest, and that the endorsement was the product of a "single signature stamp placed on the detached allonge solely for purposes of presenting the mortgage note [sic] an [sic] allonge to the Court in 2011." *Id.* at ¶ *29.* These arguments, even accepted at face value, are unpersuasive. Speculation is totally insufficient to sustain a prima facie case of fraud. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681-83 (7th Cir. 1992); *Capital One Bank v. Bungert (In re Bungert),* 315 B.R. 735, 740 (Bankr. E.D. Wis. 2004).

The Debtor has also failed to explain why the alleged improprieties concerning the signatures on the allonges are not covered by Wis. Stat. § 403.308(1). That statute provides, *inter alia*, that a "signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of the validity of the signature." Wis. Stat. § 403.308(1).

The Note in the instant case is clearly a negotiable instrument within the meaning of the Wisconsin Uniform Commercial Code.[5] The Note contains the

---

[5] Wis. Stat. § 403.104 provides:

(1) Except as provided in subs. (3) and (4), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without

(continued...)

Debtor's written promise to pay a fixed amount of money. It is payable at a

definite time, and it does not state any other undertaking.

Having concluded that the Note is a negotiable instrument, the UCC also

addresses the transfer of and the rights to the enforcement of the Note. Section

403.301, Wis. Stat., states:

> "Person entitled to enforce" an instrument means the holder of the
> instrument, a nonholder in possession of the instrument who has
> the rights of a holder, or a person not in possession of the
> instrument who is entitled to enforce the instrument under s.
> 403.309 or 403.418(4). A person may be entitled to enforce the
> instrument even though the person is not the owner of the
> instrument or is in wrongful possession of the instrument.

The holder of a negotiable instrument is the person "in possession of

[such an] instrument that is payable either to bearer or an identified person."

Wis. Stat. § 401.201(2)(km)(1). Under Wis. Stat. § 403.109(3), an instrument

---

[5](...continued)
interest or other charges described in the promise or order, if all of the following
apply:

(a) It is payable to bearer or to order at the time that it is issued or first comes
into possession of a holder.
(b) It is payable on demand or at a definite time.
(c) It does not state any other undertaking or instruction by the person
promising or ordering payment to do any act in addition to the payment of
money, but the promise or order may contain any of the following:

1. An undertaking or power to give, maintain or protect collateral to secure
payment.
2. An authorization or power to the holder to confess judgment or realize on or
dispose of collateral.
3. A waiver of the benefit of any law intended for the advantage or protection of
an obligor.

payable to an identified person becomes payable to the bearer if it is endorsed in blank. Wis. Stat. § 403.205(2).

BANA is in possession of the Note. It was endorsed in blank. As noted above, Wisconsin presumes the authenticity of the signatures on the note and the authority to make them. Wis. Stat. § 403.308(1). While the Debtor complains about the absence of the authority of the persons who signed the allonge and the mortgage assignment, this is not an action to enforce the liability of those persons. Accordingly, the authenticity of the signatures is properly presumed under Wisconsin law.

Even in the absence of Wis. Stat. § 403.308(1), this Court would be hard-pressed to give credence to the Debtor's allegations of fabrication and fraud as stated in the Amended Complaint. In the context of motions to dismiss, the Seventh Circuit has noted that while "courts must accept a plaintiff's factual allegations as true . . . some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks*, 578 F.3d at 581. Moreover, "in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* The Amended Complaint is replete with sketchy and implausible allegations framed in conclusory legal statements—and little more.

Finally, she has also failed to state the purported TARP claim explicitly in either the Amended Complaint or the proffered Second Amended Complaint.

29

The arguments made in association with the TARP "allegations" contain none of

the clarity required under Fed. R. Civ. P. 12(b)(6). None of the assertions

concerning TARP in any of the Debtor's pleadings provide anywhere close to

"sufficient factual matter" that, if part of the complaint and taken as true,

would allow the Court to conclude such claims were plausible on their face.

Instead, the Debtor's assertions concerning the role of TARP funds in

transactions involving the Debtor's Note and Mortgage amount to nothing more

than sketchy speculation and conclusory legal statements. Indeed, even if

taken as true, the factual matters asserted by the Debtor do not begin to

establish any kind of plausible claim for relief. Far from it. As a result, to the

extent the Adversary Proceeding can be construed as asserting TARP claims,

those claims must also be dismissed with the rest of the Amended Complaint

under Fed. R. Civ. P. 12(b)(6).

D.    Debtor's Lack of Standing

*Fraud Claims*

The Debtor's Amended Complaint contains several allusions to

fraudulent activity on the part of BANA as a foundation for her objection to the

allowance of the BANA claim and the enforceability of its lien. Although she

does not plead a fraud claim, her use of various conjugations of "fraud" and

"fabricate" levels accusations that ought to be addressed by this Court in the

interest of thoroughness. The basis for her assertions appears to be that

endorsements on the Note and Mortgage were fabricated by BANA in order to

30

assign itself rights to which it was not entitled. Put another way, the Debtor's theory seems to be that BANA found itself in possession of mortgage documents on which it was not the assignee, and was therefore unable to enforce them. So, the Debtor concludes, BANA forged the endorsements to make itself the assignee. Even if this were true, the Debtor overlooks the fact that since she was not a party to the assignment, she lacks standing to challenge its validity. It is well-settled in Wisconsin that one must be either a party to, or a third-party beneficiary of, a contract in order to bring a contract claim. *See Schilling v. Employers Mut. Cas. Co.*, 212 Wis. 2d 878, 886, 569 N.W.2d 776 (Wis. Ct. App. 1997).

Although the Debtor was obviously a party to the Note and Mortgage, she was not a party to the assignments or to the allonges. Likewise, to be a third-party beneficiary to a contract, the contracting parties must be shown to have entered into the agreement for the direct and primary benefit of the third party, either specifically or as a member of a class intended to benefit from the contract. *Id.* at 886-87. There is no indication that this was the case here, either. Therefore, the Debtor lacks standing to challenge the assignments because she was neither a party to, nor a third-party beneficiary of, the assignments and endorsements. *See id.*; *see also Rinaldi*, 487 B.R. at 529-30 (finding that Debtor lacked standing to challenge mortgage assignment because borrower was not party to or third-party beneficiary of pooling and servicing agreement); *Edwards v. Deutsche Bank Nat'l Trust Co. (In re Edwards)*, 2011 WL

31

6754073, at *3 (Bankr. E.D. Wis. 2011) (concluding that Debtor lacked standing to challenge pooling and servicing agreements because he was not a party to or third-party beneficiary of the agreements).

Regardless of which entity owned the Note, and even if the Note was fraudulently assigned, the Debtor's obligation remained the same as it ever was: to pay her mortgage, upon penalty of foreclosure. BANA is the lawful holder of the Note and Mortgage. As such, it is entitled to enforce those instruments.

### TARP Claim

As with her fraud claims, the Debtor also lacks standing to assert the TARP claim against BANA. The discussion, *supra*, concerning the requirements for standing to bring a contract action applies as readily in the context of the Debtor's arguments concerning TARP as it does in the context of her arguments concerning fraud. Put simply, the Debtor was clearly neither a party to, nor a third-party beneficiary of, any subsequent transfer of the Note and Mortgage.[6] As a result, regardless of the merits of her claim, she may not challenge the propriety of those transfers because she lacks standing.

---

[6] Most courts that have considered whether homeowners are third-party beneficiaries of TARP-related assignments of their mortgages have concluded that they are not. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012) (noting in dicta that the courts that have concluded that homeowners are third-party beneficiaries may have been led astray by a 2009 Ninth Circuit opinion that was reversed by the Supreme Court in 2011); *Baginski v. JP Morgan Chase Bank, N.A.*, No. 11-C-6999, 2012 WL 5989295, at *3 (N.D. Ill. 2012) (citing *Wigod*, 673 F.3d at 559 n.4); Chase Home Finance, LLC v. Scarpace, No. 2011AP2550, 2013 WL 1222952, at *1 (Wis. Ct. App. 2013) ("A homeowner has no cause of action to enforce HAMP guidelines as a third-party beneficiary . . . .") (citing *Wigod*, 673 F.3d at 559 n.4).

## CONCLUSION

For the foregoing reasons, the Debtor's Motion to Amend is denied.
BANA's Motion to Dismiss is granted. The Debtor's request for costs and fees is
denied. The claim objection is overruled and denied. BAC's proof of claim is
allowed as filed.

The Court has authority to enter a final order on the objection to claim.
With respect to the claims made in this adversary proceeding, the Court has
authority to enter a final order on the allowance of the claim and on the validity
and enforceability of BANA's lien. The Court will enter separate orders in this
adversary proceeding and in the Debtor's bankruptcy case disposing of the
pending motions and objections filed in the main case.

Since the parties have not consented to this Court's entry of a final order
on any non-core proceedings, the Court recommends that the district court
enter a final order dismissing the Debtor's fraud claim and the claim for costs
and attorney fees associated with such claim, and denying the Debtor's Motion
to Amend to the extent she seeks to amend in order to include claims for
damages for fraud. This decision constitutes proposed findings of fact and
conclusions of law as to those issues. The parties are advised that Bankruptcy
Rule 9033 requires objections to the proposed findings and conclusions be filed
with the Bankruptcy Court within 14 days of service of this decision. Any party
may respond to the other parties' objections within 14 days after service of the
objections.

33

A separate order consistent with this decision will be entered.

Dated: April 23, 2013

BY THE COURT:

/s/ Catherine J. Furay

_____

Hon. Catherine J. Furay
U.S. Bankruptcy Judge